ARVELO ET AL., PLAINTIFFS AND APPELLEES, *v.* BANCO
TERRITORIAL Y AGRÍCOLA, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan in an Action
for Damages.

No. 2135.—Decided July 29, 1921.

DAMAGES—MORTGAGE—FORECLOSURE—MEASURE OF DAMAGES.—What a defend-
ant should pay as damages for a property which he acquired unlawfully and
which he can not restore because it is in the possession of a third person
who had no notice of the unlawfulness of the acquisition of his grantor is
not the value of the property while in the possession of its lawful owner,
nor the value which he and the defendant agreed upon in a mortgage deed
in case of foreclosure, but the market value of the property when the owner
was deprived of it.

ID.—PROFITS.—When profits are claimed it is necessary to prove not only the
market value of the crops at the time they were harvested, but also the ex-
penses incurred in their production; and the burden of proof of both items
is on the plaintiff, for otherwise there is no basis upon which to determine
the profits.

The facts are stated in the opinion.

*Mr. J. Tous Soto* for the appellees.

*Mr. Juan de Guzmán Benítez* for the appellant.

MR. JUSTICE ALDREY delivered the opinion of the court.

The children of Hilario Arvelo brought an action against
the Banco Territorial y Agrícola for the annulment of a cer-
tain foreclosure proceeding brought by the bank against them
for the collection of a debt secured by a mortgage created
by the ancestor of the plaintiffs on a property belonging
to him, the property having been conveyed to the bank and
sold by it thereafter to a third person who had no notice
of the defects in the proceeding alleged by the plaintiffs,
and as the bank was unable to restore the property to the
plaintiffs, they prayed for recovery of the value of the prop-
erty and the mesne profits.

After a trial and an examination of all of the evidence
the District Court of San Juan, Section 1, in which the ac-
tion was prosecuted, dismissed both the complaint and the
counter-complaint of the defendant, and on appeal this court,

on July 27, 1917, reversed that judgment (*Arvelo* v. *Banco Territorial y Agrícola,* 25 P. R. R. 677), holding that the foreclosure proceeding was defective as pointed out in that opinion; that the complaint alleged facts sufficient to constitute the cause of action asserted, and that the action was not barred by limitation; but in view of the fact that the statement of the case filed in this court contained only the evidence examined at the trial on the questions involved in the judgment and in the appeal therefrom, without including the evidence which may have been introduced on the question of damages, we held that the causes alleged as originating the damages had been shown to exist and remanded the case to the district court for further proceedings not inconsistent with the opinion.

Thereafter the parties submitted the case to the district court for decision under the evidence previously examined and on September 10, 1918, it was adjudged that the defendant bank should pay to the plaintiffs the sum of 48,970 provincial *pesos,* or its equivalent in United States currency, as the value of the property, and also the rents and profits thereof at the rate of $1,000 a year from September 28, 1898, to the date of payment. Also the plaintiffs were adjudged to pay to the Banco Territorial y Agrícola the sum of $24,010.20 as the amount due on the mortgage which encumbered the property, with interest at 9 per cent annually on the sum of $8,846.74 from June 30, 1913, to the date of payment, without special imposition of costs.

Both parties appealed from that judgment, but only the bank has filed a brief in support of its appeal.

The appellant bank has devoted almost the whole of its lengthy brief to discussing and opposing the grounds on which we based our conclusions in the former appeal, but we are not convinced by the reasons now adduced and therefore ratify and consider as reproduced our former holdings that the plaintiffs proved the cause of action asserted and

that the action is not barred. The other part of the brief refers to the sums of money ordered to be paid by the judgment appealed from.

It appears from this record that Hilario Arvelo was the owner of a property of 909 acres of land in the ward of Jayuya of the municipality of Adjuntas containing crops of coffee and plantains, a dwelling-house, woodland, pasture and thicket, and that by a public deed of June 30, 1896, he mortgaged that property to the Banco Territorial y Agrícola to secure the payment of 15,000 provincial *pesos* which he had borrowed from the bank, with interest thereon at 9 per cent annually.

Hilario Arvelo died in April of 1897 and in 1898 the mortgagee bank brought an action against his heirs to foreclose the mortgage under the Mortgage Law and its Regulations in order to recover 14,746.56 provincial *pesos* of the loan and 79.75 *pesos* of an insurance premium, with interest, and there having been no bidders at the three auction sales announced for the collection of that claim, the property was conveyed to the mortgagee bank on September 28, 1898, for the sum of 15,546.94 provincial *pesos* and the bank was given possession of the property on March 10, 1899.

Five months thereafter, or on August 8, 1899, a hurricane devastated this Island.

The bank made many efforts to sell the property and on June 30, 1906, did sell it to Carlos López de Tord for the sum of $13,000, receiving $1,300 in cash and giving the purchaser ten years within which to pay the balance with interest.

The plaintiffs alleged in their complaint that the value of the property at the time of its conveyance to the bank was $40,000 and that the profits yielded by it since that time amount to $30,000, praying for judgment against the defendant for the sum of $70,000, the total of the two preceding items.

In order to prove these two items the only evidence introduced by the plaintiffs was the testimony of their uncle, Ramón Arvelo, whom the bank entrusted with the management of the property when the bank was given possession of it, and who has been litigating with the bank and considers himself wronged by it. This witness testified that when his brother Hilario Arvelo had the property it was worth about $40,000; that when the bank placed the witness in charge of the property it was worth about 50,000 *pesos,* and that after improvements were made on it later it was worth about $75,000; that he appraised it in bulk and did not give the value per acre, and that he has taken as a basis for the different values at which he has estimated the property the fact that he sold a property of thirty acres for $20,000 and he knows that this property is worth $500 per acre; that he purchased that property from the bank in March of 1898 and he does not remember well what was the price agreed upon, but thinks it was 36,000 *pesos;* that he does not remember having written any letters to the bank offering to purchase the property at that time and saying that the property was in a ruinous condition and was not worth $13,000; that when his brother Hilario had the property, owing to his illness the property was not well cared for and became covered with grass and trees; that on March 10, 1899, the court gave possession of the property to him as the representative of the bank; that in November, 1900, he wrote to the bank asking for money to be used on the property and promising to put in good condition one hundred or one hundred and twenty-five acres of coffee; that in another letter of November, 1901, he told the bank that he thought the property would produce from 35 to 40 quintals of coffee and in January, 1902, he wrote another letter offering to purchase the property for $16,000 and stating that he had expended 7,500 *pesos* on it and that it looked better only because of his work; that he values the property at

40,000 *pesos* and before the cyclone he appraised it at 50,000 *pesos*.

This witness testified also with respect to the products of the property, stating that when he took possession of it it contained about 75 acres of producing coffee and about 200 acres of newly planted coffee; that before the cyclone it produced about 200 quintals of coffee, but afterwards it produced very little.

This was all of the oral evidence introduced by the plaintiffs with regard to the value of the property and its products. The documentary evidence consisted of the record kept by the bank of the loan to and mortgage given by Arvelo, wherein there is a report made at the instance of Arvelo in January, 1895, by three persons who appraised the property at $58,064.10, and another report by Fernando López Tuero of May 8, 1896, wherein he states that the same was made at the instance of the bank and that he appraised the property at 48,970 *pesos*.

From the oral evidence introduced by the defendant it appears that the bank managed the property carefully, keeping the coffee groves clean and properly replanted; that in the first year after the bank acquired the property it showed a loss of $298 and the second year a loss of $13; that new coffee groves were planted; that in 1905 there were from 125 to 130 acres of coffee which had been greatly damaged by the hurricane; that the crop of 1904–1905 amounted to 35 quintals and was sold at $11 and $11.60; that when the bank sold the property its total cost had been more than $16,000 and after many efforts to sell it, by advertising and otherwise, the best price that the bank could get for it was $13,000, only a small part of which was paid in cash; that several persons went to see the property, but when the bank asked them $16,000 for it, which was its cost, they did not return and it was impossible to obtain that price; that a property producing 400 to 500 quintals of coffee has an

expense of at least 7 or 8 *pesos* the quintal and small properties do not cover expenses.

One witness who had managed the property for the bank in 1904 testified that it could not be worth more than 10,000 or 11,000 *pesos* on account of the quality of the land and business conditions at that time, most of the soil being yellow clay, which is not suitable for coffee, and the portion planted in coffee being in some parts sandy and in others stony, which also is not suitable for coffee, although it produces some; that at that time there were 40 or 50 acres of coffee in patches as a result of the hurricane and it was worth about 65 or 70 *pesos* an acre, it having produced 40 quintals of coffee in 1904.

López de Tord testified that when he purchased the property in 1906 he expended $2,500 on it and there were only 150 acres of coffee, the crop that year, which was extraordinary, being 200 quintals and the price being $10; that in the three following years each crop was 150 quintals and thereafter the crops increased to 250, 300 and 500 quintals; that he had expended on the property the proceeds of the crops and about $20,000 more; that he planted 90 acres in coffee after he took possession and had converted into coffee groves from 40 to 50 acres of underbrush and 200 acres of woodland.

The overseer employed by López de Tord testified that the latter had expended from 36,000 to 38,000 *pesos* on the property.

The documentary evidence of the defendant on this point consisted of certificates from the Treasury Department regarding the official assessments of the property for the purpose of taxation during twelve fiscal years, from 1902 to 1914, from which it appears that for the first three years it was assessed at $6,996; for the fourth year at $9,784; for the five years following at $13,000, and for the last three years up to the year 1913–14 at $14,130.

In the mortgage deed of 1896 the following was stated regarding the value of the property:

"Value: The legal value of the rural property described, with all it groves, woodland, thickets, dwelling-house, storehouse and other buildings, although declared by experts to amount to 48,970 *pesos,* is fixed by the contracting parties at 42,500 *pesos,* Spanish provincial currency, for the purposes of article 66 of the Regulations for the Execution of the Mortgage Law, they waiving all further appraisement or action to that effect."

With this evidence before it the trial court, in determining the value of the property, ignored the oral evidence, holding that it was uncertain and contradictory, and we think that the court acted correctly as to the only witness called by the plaintiffs, for apart from the fact that he was their uncle and that he had been litigating with the bank which he thought had wronged him, in his testimony he gave no reasons for his statements and merely valued the property in bulk and contradicted himself in appraising the property at $40,000 when he had offered the bank $16,000 for it, and also because if the land was worth $500 an acre, as he said in his testimony, the area of the property being 909 acres its value would be $454,500 and not $40,000.

But the court fixed the value of the property at 48,970 provincial *pesos* on the basis that López Tuero had appraised it at that sum a short time before the mortgage contract was entered into and that in the same deed the parties admitted that that was the value of the property, the court being unable to see a good reason why the same parties who admitted that that was its value should agree to give it a less value, for which reason it took no account of the value of 42,500 *pesos* agreed upon by the parties in the deed, the value having been admitted to be another sum. We do not agree with this position of the trial court.

The mere fact that the bank's expert estimated the value of the property at 48,970 *pesos* does not make that a legal

valuation. It was the opinion of an expert and no more, and if there was any valuation of the property in the deed it was that of 42,500 *pesos* fixed by the common consent of the parties for the purposes of the Mortgage Law. But that so-called legal value was fixed by the parties not because according to law the property had any legal value, but only in the event of foreclosure, because article 127 of the Mortgage Law requires that mortgage deeds shall state the value at which the contracting parties appraise the property in order that it may serve as a basis for the sale in case of foreclosure in order to curtail the proceeding by avoiding the necessity of an appraisement; but this is the only reason for the valuation which, according to article 66 of the Regulations, shall be made to appear in the record in the registry and it does not determine that for all time to come, even after the cancelation of the mortgage, the property is worth for all purposes the amount agreed upon as a basis for the sale in case of foreclosure. In the case of *Cintrón et al.* v. *Banco Territorial y Agrícola,* 15 P. R. R. 495, this court held that the appraisal of a property by the contracting parties does not constitute a fixed price, unalterable and not subject to reduction, for the sale or award. Therefore, in this case, which does not involve the foreclosure of the mortgage, but the annulment of the foreclosure proceedings and the determination of the damages to be paid for the property which can not be restored by the bank or recovered from the present owner, the value is not to be governed by the agreement of the parties for the purpose of foreclosure.

The amount that a defendant should pay as damages for a property which he acquired unlawfully and can not restore because it is in the possession of a third person who had no notice of the unlawfulness of its acquisition by his grantor is not the value of the property while in the possession of its lawful owner, nor the value which the plaintiff and the defendant agreed upon in a mortgage deed in compliance

with the requirement of law that a value be fixed in the event of foreclosure. That this should be so is shown clearly by the record, for although the parties stipulated in 1896 that the value of the property was 42,500 provincial *pesos,* nevertheless when the mortgage was foreclosed two years later and the property was sold, the mortgagor had been ill and had neglected the property, letting it become practically a forest, and nobody offered to purchase it for the sum of $14,746 due to the bank, so it became necessary to convey it to the bank for 15,546.94 provincial *pesos.* This was also the understanding of the plaintiff, for in the complaint they did not claim as the value of the property either the $48,970 at which it was appraised by López Tuero or the $42,500 at which it was valued by agreement when it was mortgaged, but claimed the sum of $40,000 as the value of the property at the time of the foreclosure. Therefore, the valuation should refer to the time when the owner was deprived of the property. In 13 Cyc. 148, 170, it is said that where property has been lost or destroyed through the negligent act of another, the usual rule as to the measure of damages is the reasonable worth of the property at the time of its destruction. In fixing the value of the property at 48,970 provincial *pesos* the court not only allowed the plaintiffs more than they asked for, but also took as a basis a time different from that on which the plaintiffs based their claim.

In the light of the foregoing, let us see what is the amount that should be paid for the property.

As the value of a property depends upon many facts, some related to the property and others independent of it, such as the facilities for its cultivation in comparison with other properties and the general condition of business, the latter being a factor of great importance, the best method of ascertaining its value and the one usually followed is to determine its market price, and inasmuch as after the property left the possession of the plaintiffs there is no other

evidence of its value but the sale which after repeated attempts the bank made of it to López de Tord for the sum of $13,000, of which little was paid in cash, we shall fix the said sum as the market value of the property, assuming that, like every owner, the bank tried to obtain the best possible price for it.

As to the pronouncement of the judgment that the bank pay for the products of the property at the rate of $1,000 annually, we can not sustain it but hold that nothing should be paid, for although it was proved that coffee was produced and had a certain market price, yet the expenses incurred in its production were not proved. It is so admitted by the trial court in stating the following in its opinion:

"The expenses incurred in producing the crops have not been proved, nor those actually incurred while the bank held the property."

In order that a defendant may be adjudged to pay a certain sum of money for the products of a property during a fixed period it is necessary to prove not only the price obtained for the said products in the market, but also the expenses incurred in their production, for without evidence of both items the court is not in a position to ascertain the resulting net profit, which is the actual production of the property. Evidence only of what is obtained from the sale of the products does not show their value, because there are necessary expenses which sometimes greatly decrease and even offset the proceeds of the sale, and those expenses must be deducted from the price obtained, the burden of proof of both items being on the person who seeks to recover in order to show that the property yielded profits. *Morales et al.* v. *Landrau et al.*, 15 P. R. R. 761; *Sánchez* v. *Hartzell et al.*, 26 P. R. R. 620; *Roig* v. *Pérez*, 27 P. R. R. 281.

The defendant made a counter-claim against the plaintiffs and prayed the court that if the complaint were sus-

tained judgment should be given to the bank for the debt secured by the mortgage and the interest thereon, and in support of that claim presented at the trial a statement made by it showing the sum to which the mortgage debt of Hilario Arvelo would have amounted on June 30, 1913, with the corresponding interest, if it had not been paid.

The first item of that account is the unpaid balance of the principal of the loan, due on May 31, 1897, amounting to 14,744 provincial *pesos,* equivalent to $8,846.74; another of $812.81 for taxes paid by the bank, and another of $306.25 for insurance premiums paid also by the bank, making a total of $9,965.80. Then there are other items for interest on the principal after May 31, 1897, for interest on the sums paid for taxes and insurance, for commission on advance payment and $361.22 for court expenses. Total, $24,371.42. From this account the court deducted the last item for court expenses and adjudged the plaintiffs to pay the balance of $24,010.20 and interest at nine per cent on the $8,846.74 of the mortgage debt.

We are of the opinion that the bank can recover only $9,965.80, the total of the first three items for the mortgage debt, the taxes and the insurance premiums paid and interest on that sum at the agreed rate of 9 per cent from the 31st of May, 1897, to the 10th of March, 1899, when the property was officially delivered to the bank; for after that date the bank received first the profits that the property may have yielded and afterwards the interest on the amount paid by López de Tord on the purchase price, and therefore the plaintiffs should not pay interest that the bank has received.

For all of the foregoing the appeal taken by the plaintiffs should be dismissed and in that taken by the bank the judgment should be affirmed after being modified as follows: That the bank pay to the plaintiffs as the value of the property the sum of $13,000, without paying anything for mesne

profits; and that the plantiffs pay to the bank the sum of $9,965.80 with interest thereon from June 1st, 1897, to March 10, 1899.

*Modified and affirmed.*

Chief Justice Hernández and Justice Wolf concurred.

Justices Del Toro and Hutchison concurred in the judgment except as to the amount of the damages.